IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

ROGUE TRUCK BODY, LLC,                          Case No. 1:13-cv-00265-CL

            Plaintiff,                          **ORDER**

      v.

UNITED STATES OF AMERICA,

            Defendant.

---

CLARKE, Magistrate Judge.

      On February 14, 2013 , Plaintiff Rogue Truck Body, LLC ("Rogue") filed a complaint

against the United States of America ("Government") claiming it erroneously or illegally

assessed an excise tax on Rogue's sales of heavy truck equipment in the 2005 and 2006 calendar

years. After Rogue filed an amended complaint (#11), the Government filed an answer (#12),

which includes a counterclaim to reduce to judgment the tax assessments at issue. Full consent

by all parties to jurisdiction by a United States Magistrate Judge was filed on April 25, 2014

(#9). This case comes before the Court on a motion for summary judgment (#20) filed by the

Government. For the reasons below, this motion is GRANTED.

## BACKGROUND

Rogue Truck Body, LLC, was founded in 1990 by Keith and Lana Hill, and initially it began as a company that did repair work on heavy duty trucks. Sometime in the late 1990s, Rogue began manufacturing truck bodies and trailers for the heavy duty truck market. A truck body is the big box part of a dump truck; Rogue builds the boxes and mounts these boxes on new trucks. Rogue also builds the trailers with boxes, which go behind dump trucks and are referred to as transfer sets. Finally, Rogue builds "super dumps," which are the dump bodies for a very large single dump truck. For most transactions, Rogue works with a dealer who procures a truck to match a Rogue transfer set, and that dealer then makes a bid package to a customer. Occasionally, a customer buys a truck from a dealer and approaches Rogue directly to install a body on the truck.

Rogue's compliance with the statutes and applicable treasury regulations concerning the excise tax was audited by the IRS on three occasions prior to the audit at issue in this case. According to Rogue, its procedures regarding the retail sales, and corresponding excise tax practices, were a result of the prior audits and directions given by the IRS agents during those audits. According to Lana Hill, during the audit in the late 1990's, Rogue was told by IRS Agent Thomas Booher that if Rogue received a form 637 from a dealer, sales to that dealer were exempt from excise tax. L. Hill Decl. 2. Thus, Rogue began collecting form 637 from dealers "in order to verify the sale was not subject to excise tax." Plf. Resp. 4; L. Hill decl. 2.

After that, Rogue would request form 637 from a dealer on the first occasion Rogue dealt with that dealer, but did not request an additional form 637 for each subsequent transaction with the same dealer. Id. According to Rogue, during the years 2005 and 2006, if Rogue received an

order from a dealer who did not provide a form 637, Rogue charged excise tax on that transaction and paid the excise tax to the United States.

Additionally, Rogue claims that it received a written report from an audit conducted in 2003 that indicated that Rogue's practices and procedures were in compliance with the law and regulations concerning collection and payment of excise tax. Rogue claims that it viewed this "no change" report as confirmation that a form 637 would cause a sale to a dealer to be exempt from excise tax.

Finally, as a result of the IRS audit of Rogue's excise tax practices for 2005 and 2006, IRS Agent Curtis advised Rogue that form 637 was no longer acceptable to exempt a transaction with a dealer. L. Hill Decl. 4. However, during the administrative appeal of this excise tax issue, IRS Agent Gary Hiracki told Rogue that the IRS did not intend to collect the excise tax because that would be "collecting the same excise tax a second time." Id. Agent Hiraki told Lana Hill that the excise tax claimed due would be abated and not collected from Rogue. Id.

## STANDARD

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material of fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. Id. at 250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. Devereaux, 263 F.3d at 1076. In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995).

## DISCUSSION

### I.    Rogue did not strictly comply with the treasury regulations

Congress has imposed a 12% excise tax upon the first retail sale of (a) automobile truck chassis, (b) automobile truck bodies, (c) truck trailer and semitrailer chassis, (d) truck trailer and semitrailer bodies, and (e) tractors used for highway transportation. 26 U.S.C. § 4051(a). Treasury Regulation § 48.4052-1 provides the conditions for one exemption from this tax:

> Tax is not imposed by section 4051 on the sale of an article for resale or leasing in a long-term lease if, by the time of sale, the seller has in good faith accepted from the buyer a statement that the buyer executed in good faith and that is in substantially the same form, and subject to the same conditions, as the certificate described in § 145.4052–1(a)(6) of this chapter, except that the certificate must be signed under penalties of perjury and need not refer to Form 637 or include a registration number. . . . This section is applicable after June 30, 1998.

26 C.F.R. § 48.4052-19(a), (c). Treasury Regulation § 145.4052–1(a)(6) provides that the Exemption Certificate shall be substantially in the following form:

Exemption Certificate

I hereby certify that I am _____ (Title) of _____, (Name of purchaser) that I am authorized to execute this certificate, and that:

(Check appropriate line)

___ the article or articles specified in the accompanying order, or on the reverse side hereof, (or)

___ all orders placed by the purchaser for the period commencing _____ (Date) (period not to exceed 12 calendar quarters), are purchased either for resale or for lease on a long-term basis.

I have filed Form 637 and have received registration number _____.

I understand that the fraudulent use of this certificate to secure exemption will subject me and all parties making such fraudulent use to a fine of not more than $10,000, or to imprisonment for not more than 5 years, or both, together with costs of prosecution.

_____
(Signature)

_____
(Address)

Thus, to comply with the applicable regulations, Rogue needed to obtain a statement signed by each dealer under penalties of perjury that each sale at issue was purchased either for resale or for lease on a long-term basis. It needed to do this for each transaction, at the time of the sale, unless the dealer stated that all orders made during a specified period of time, not to exceed 12 calendar quarters, were purchased for that purpose. Notably, the regulation above eliminated the previously required need for the dealer to certify that it had filed a form 637, which is the form for an application for registration that dealers must file with the IRS in order to qualify for the exemption as a retail seller. Rogue concedes that it did not obtain exemption certificates for the truck sales at issue in this case. Instead, Rogue argues that it substantially complied with the regulations by collecting a form 637 from each dealer.

## II.    Rogue did not substantially comply with the treasury regulations

The doctrine of substantial compliance is an equitable doctrine designed to avoid hardship in cases where a party has done all that can be reasonably expected. <u>Baccei v. United</u>

States, 632 F.3d 1140, 1145 (9th Cir. 2011) (citing Sawyer v. Sonoma County, 719 F.2d 1001, 1008 (9th Cir.1983)). The Ninth Circuit has held that "[s]ubstantial compliance with regulatory requirements may suffice when such requirements are procedural and when the essential statutory purposes have been fulfilled." Shotgun Delivery, Inc. v. United States, 269 F.3d 969, 973 (9th Cir.2001). "Full compliance is necessary when the requirement relates to the substance of the statute or where the essential purposes have not been fulfilled." Id. at 973–74; see also Sawyer, 719 F.2d at 1008 (stating that "in the context of statutory prerequisites, the doctrine [of substantial compliance] can be applied only where invocation thereof would not defeat the policies of the underlying statutory provisions").

Substantial compliance, as applied to tax regulations, has been defined almost identically in the Court of Appeals for the Fourth Circuit:

> A taxpayer may be relieved of perfect compliance with a regulatory requirement when the taxpayer has made a good faith effort at compliance or has a "good excuse" for noncompliance, and (1) the regulatory requirement is not essential to the tax collection scheme but rather is an unimportant or "relatively ancillary requirement" or (2) the regulatory provision is so confusingly written that it is reasonably subject to conflicting interpretations.

Volvo Trucks of N. Am., Inc. v. United States, 367 F.3d 204, 210 (4th Cir. 2004). Using that standard, the Fourth Circuit considered precisely the issue before the Court in the case at bar. In the Fourth Circuit case, Volvo brought an action against the IRS for a refund of excise taxes paid under section 4051(a) for heavy trucks that Volvo sold to dealers during 1989-91. Id. at 205. Volvo claimed that even though it failed to provide exemption certificates, it substantially complied with the regulations by instructing dealers to both register with the IRS (by completing a form 637) and provide Volvo with exemption certificates. Id. at 209.

The court readily concluded that Volvo did not substantially comply with the excise tax regulations. Id. at 210. Regulation §.145.4052–1 was unambiguous in requiring that Volvo produce exemption certificates, and this provision "was essential to the IRS's collection effort in that it demonstrated which party was responsible for the excise tax imposed by § 4051." Id. The court concluded that the statute "created a presumption that any sale, including the manufacturer's sale to the dealer was a 'first retail sale,' and therefore the manufacturer owed the tax unless the dealer certified that it was purchasing the vehicle for resale." Id. The court gave an example that illustrates why registration with the IRS, or provision of a form 637, is not sufficient for substantial compliance:

> if the dealer were purchasing trucks for its own use or for a business of daily rentals, the manufacturer would have to pay the excise tax itself. But if the dealer were purchasing trucks for resale or long-term leasing and so certified, the manufacturer would not have to pay the tax. Volvo's failure to provide the required demonstration that its dealers were purchasing trucks for resale thus left the tax regulation in its default application, requiring Volvo to pay the excise tax.

Id.

Like Volvo, Rogue did not provide exemption certificates, or any equivalent statements to comply with section 4051. Rogue reasons that its process – obtaining a form 637 from each dealer – should qualify its sales as exempt from the excise tax because, in order to complete a form 637, those dealers all had to be registered with the IRS as a retail seller. Therefore, Rogue's customers, the dealers, would resell the trucks to their own customers, and that transaction would be the "first retail sale" and subject to the excise tax. Rogue claims that this process "verified the transactions in which they engaged with dealers were not first retail sales." The Court disagrees; providing a form 637 verified merely that the dealer qualified for an exemption, not that each specific transaction was exempt.

Like Volvo, Rogue failed to provide certification that each individual transaction was made for resale, thus the IRS had no way of verifying the dealer was not purchasing trucks for its own use or for a business of daily rentals. Additionally, the Court concludes, as the Fourth Circuit did, that the regulation was unambiguous, and the provision was essential to the IRS collection efforts. Therefore, Rogue cannot obtain the benefit of substantial compliance regarding the excise tax regulations.

### III.    Rogue's transactions were the "first retail sales" and subject to the excise tax

Rogue argues that, regardless of its compliance with the regulations, the sales at issue were not the "first retail sales" and therefore the tax should not be imposed on Rogue, but on the dealers who resold the trucks to the ultimate purchasers. This argument is hardly distinguishable from the one addressed above, but again, under the regulations, the default application of the excise tax is to the first sale, which includes the manufacturer's sale to a dealer, unless the manufacturer provides an exemption certificate signed by the dealer. See also Freightliner of Grand Rapids, Inc. v. United States, 351 F. Supp. 2d 718, 726 (W.D. Mich. 2004) ("Under the regulation, all sales of taxable items are deemed to be 'first retail sales' . . . unless one of the three exceptions described in 26 C.F.R. § 145.4052–1(a)(2) applies. . . . [The resale] exception only permits the tax responsibility to be shifted from the seller to the purchaser if the purchaser has signed a certificate agreeing that it intends to resell or lease the vehicles on a long-term basis"). The exemption certificates were not provided here, thus Rogue's transactions trigger the application of the excise tax.

### IV.    Abatement due to erroneous advice is not applicable

Rogue also argues that it received advice from IRS agents indicating that the form 637 it collected from dealers was sufficient to make its transactions exempt from the excise tax.

However, a taxpayer is only entitled to tax abatement if it has "reasonably relied" on "erroneous written advice by the Internal Revenue Service" that was "in response to a specific written request of the taxpayer." 26 U.S.C. § 6404(f)(1)-(2). Additionally, to receive the benefit of an abatement under this section, the taxpayer must submit form 843 and include copies of the taxpayer's written request for advice, the erroneous written advice furnished by the IRS, along with other supporting documentation. Rogue has not submitted any supporting documentation that it sought specific advice in writing from the IRS, nor that the IRS provided such written advice in response. Rogue does not appear to have filed a form 843. Therefore section 6404 does not apply to abate the excise tax due in this case.

## ORDER

The defendant's motion (#20) is GRANTED. Judgment shall be entered for the defendant in the amount of $714,010.96, as of April 1, 2013, plus statutory additions, less payments or credits, thereafter as provided by law.

It is so ORDERED and DATED this _____ day of October, 2014.

MARK D. CLARKE
United States Magistrate Judge